UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAVARIOL MARQUAVIS TAYLOR,

                    Plaintiff,

v.                                                    Case No. 1:22-cv-508

                                                      Honorable Phillip J. Green

UNKNOWN BURTON, et al.,

                    Defendants.

_____/

## OPINION

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Plaintiff has been granted leave to proceed *in forma pauperis*.  (ECF No. 4.)  Pursuant

to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff

consented to proceed in all matters in this action under the jurisdiction of a United

States magistrate judge.[1]  (ECF No. 1, PageID.4.)

    In an opinion and judgment (ECF Nos. 5 and 6) entered on August 9, 2022, the

Court dismissed Plaintiff's complaint on grounds of immunity and for failure to state

a claim pursuant to which relief could be granted.  Plaintiff subsequently moved to

amend his complaint in two ways: (1) to add new claims and defendants; and (2) to

pursue claims against Defendants in both their official and personal capacities.  The

Court denied Plaintiff's motion to the extent he sought to add new claims and

defendants, and granted the motion to allow Plaintiff to proceed against Defendants

_____

[1] (*See* ECF No. 5, PageID.20–22.)

in both their official and personal capacities.  The Court vacated the prior judgment and indicated that it would re-screen Plaintiff's complaint.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Lambert and Berry.  The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Burton: (1) Plaintiff's official capacity claims; (2) Plaintiff's First Amendment retaliation claim; (3) Plaintiff's First Amendment interference with outgoing mail claim; (3) Plaintiff's Eighth Amendment claim regarding denial of medical care; (4) Plaintiff's Fourteenth Amendment claims; and (5) Plaintiff's claim regarding issues with the grievance procedure. Plaintiff's Eighth Amendment excessive force claim against Defendant Burton remains in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.  The events about which he complains occurred there.  Plaintiff sues Housing Unit Manager T. Lambert, Corrections Officer Unknown Burton, and Registered Nurse Unknown Berry.  He sues Defendants in both their official and personal capacities.  (ECF No. 1, PageID.2; ECF No. 7, PageID.34.)

Plaintiff alleges that on May 13, 2022, he was slammed into his cell door twice by Defendant Burton on his way to and from seeing Defendant Berry.  (ECF No. 1, PageID.3.)  Plaintiff was unable to protect his face and head because he had handcuffs on.  (*Id.*)  Plaintiff told Defendants Berry and Lambert about the incident; they both "did nothing about the issue."  (*Id.*)  When Plaintiff asked why it had happened, Defendant Burton responded, "Simply just a little retaliation."  (*Id.*)  Plaintiff submitted a grievance, but it was never submitted by staff.  (*Id.*)

Plaintiff suggests that he never received any medical care.  (*Id.*)  He alleges further that while he was in the segregation unit, Defendant Burton unsealed his outgoing mail.  (*Id.*)  Defendant Burton then told Plaintiff, "It's a federal offense[,] I know[,] but so what, who [is going to] stop me b****?"  (*Id.*)  Plaintiff contends that Defendant Burton's use of force "was to retaliate."  (*Id.*)  He also suggests that he is entitled to notice when outgoing mail is rejected.  (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights.  (*Id.*)  He seeks $894,000.00 in compensatory and punitive damages.  (*Id.*, PageID.4.)  He also asks that Defendant Burton lose his job and that Defendant Berry lose her nursing license.  (*Id.*)  Plaintiff also seeks release from prison and to be placed on home confinement based upon medical vulnerability and health risks posed by the COVID-19 virus.  (*Id.*; ECF No. 1-1, PageID.7.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is

4

entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Official Capacity Claims

As noted *supra*, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights. (ECF No. 1, PageID.3.) To the extent Plaintiff sues Defendants in their official capacities (*id.*, PageID.2), a suit against individuals in their official capacities is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated

5

Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks both monetary damages and injunctive relief.  Official capacity defendants, however, are absolutely immune from monetary damages.  *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998).  The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity.  *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official).  The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state.  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).  Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have

6

been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Plaintiff seeks three types of injunctive relief: (1) an order directing the MDOC to fire Defendant Burton; (2) an order directing the State of Michigan to revoke Defendant Berry's nursing license; and (3) an order releasing Plaintiff to home confinement. (Compl., ECF No. 1, PageID.4.) The Sixth Circuit has recently noted, however, that "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff does not allege an ongoing violation of federal law.

As noted *supra*, Plaintiff contends that Defendant Burton slammed him into the cell door twice on May 13, 2022, and unsealed his outgoing mail on one occasion. (ECF No. 1, PageID.3.) Plaintiff has not alleged an ongoing violation against Defendant Burton; therefore, he has failed to state a proper claim for relief under *Ex Parte Young* against Defendant Burton. Plaintiff contends that Defendant Berry, on May 13, 2022, refused to listen to Plaintiff or report Defendant Burton's alleged misconduct. Plaintiff has not alleged an ongoing violation against Defendant Berry; therefore, he has failed to state a proper claim for relief under *Ex Parte Young* against Defendant Berry.

Plaintiff's request for release is premised on the dangers of COVID-19. To the extent COVID-19 continues to pose a risk at Plaintiff's facility, he has arguably alleged on ongoing violation that might support a claim for relief under *Ex Parte Young*. But a claim for release and placement on home confinement is available only upon habeas corpus review.

Constitutional challenges to the conditions of confinement are proper subjects for relief under 42 U.S.C. § 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973). But release from custody is available only upon habeas corpus review. *See Preiser*, 411 U.S. at 484 (discussing that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). "The Supreme Court has held that release from confinement—the remedy petitioner[] seek[s] here—is 'the heart of habeas corpus.'" *Wilson v. Williams*, 961 F.3d 829, 868 (6th Cir. 2020) (quoting *Preiser*, 411 U.S. at 498).[2]

Because Plaintiff's request for equitable relief challenges the fact of his incarceration, he cannot seek such relief in this § 1983 action. *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (concluding that dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23–24 (7th Cir. 1997) (discussing that the reasons for not construing a § 1983 action as one seeking habeas relief include (1)

---

[2] The *Wilson* petitioners were federal prison inmates who also sought release from custody because of the risks posed by COVID-19; but they sought relief under 28 U.S.C. § 2241.

potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, and (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)). The Court, therefore, will dismiss Plaintiff's claim seeking release from custody because it fails to state a claim for relief under § 1983.

### B.     Personal Capacity Claims

### 1.     Claims against Defendants Lambert and Berry

Plaintiff alleges that Defendant Berry "refused to listen or report" the use of force by Defendant Burton. (ECF No. 1, PageID.3.) He also avers that Defendant Lambert "did nothing" about the use of force. (*Id.*)

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has

9

violated the Constitution." *Iqbal*, 556 U.S. at 676.  Here, Plaintiff has failed to allege any facts suggesting that Defendants Lambert and Berry engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

### 2.    First Amendment Claims

#### a.    Retaliation

Plaintiff contends that Defendant Burton retaliated against him by using excessive force and opening his outgoing mail.  (ECF No. 1, PageID.3.)  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v.*

*Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening].") (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Here, Plaintiff merely alleges the ultimate fact of retaliation.  While he references filing a grievance, the complaint is devoid of any facts suggesting that he engaged in protected activity before Defendant Burton used excessive force against him and opened his outgoing mail on one occasion.  Plaintiff has presented no facts whatsoever that Defendant Burton retaliated against him because of any protected activity he engaged in. Plaintiff, therefore, fails to set forth a plausible First Amendment retaliation claim against Defendant Burton.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### b. Interference with Outgoing Mail

Plaintiff also vaguely asserts that Defendant Burton unsealed his outgoing mail on one occasion when Plaintiff was in segregation.  (ECF No. 1, PageID.3.) According to Plaintiff, Defendant Burton stated, "It's a federal offense I know but so what, I do what I want, who [is going to] stop me b****?"  (*Id.*)  Plaintiff's complaint is devoid of any facts regarding the nature of the piece of outgoing mail that

Defendant Burton allegedly unsealed.  In any event, with respect to outgoing mail, generally, "isolated instances of interference with prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment.  *See Johnson v. Wilkinson*, 229 F.3d 1152 (6th Cir. 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 201) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation).  Here, Plaintiff alleges only one instance of outgoing mail interference by Defendant Burton.  This behavior does not rise to the level of a First Amendment violation; accordingly, the Court will dismiss this claim.

### 3.    Eighth Amendment Claims

#### a.    Excessive Force

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)), *quoted in Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force,

provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted).   The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'"   *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred.   *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).   "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.   "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

Here, Plaintiff alleges that on May 13, 2022, Defendant Burton twice slammed him into his cell door on the way to and from seeing Defendant Berry.   (ECF No. 1, PageID.3.)   Plaintiff had handcuffs on and was unable to protect his face and head. (*Id.*)   Given these allegations, the Court concludes that Plaintiff has set forth a plausible Eighth Amendment excessive force damages claim against Defendant Burton.

### b.   Medical Care

Plaintiff vaguely suggests that his medical needs were neglected.   (ECF No. 1, PageID.3.)   The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97,

103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

Plaintiff's allegation regarding medical care and the lack thereof is wholly conclusory. Plaintiff does not identify the medical needs he required care for, nor does he allege facts suggesting that any of the named Defendants were personally involved in the denial of any medical care. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff's Eighth Amendment claims regarding denial of medical care will, therefore, be dismissed.

### 4. Fourteenth Amendment Claims

Plaintiff vaguely contends that Defendants violated his Fourteenth Amendment rights without providing any additional explanation. (ECF No. 1, PageID.3.)

### a. Due Process

To the extent that Plaintiff intended to raise a procedural due process claim, he fails to state such a claim. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause,

and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).  Here, nothing in the complaint suggests that Defendants deprived Plaintiff of any protected liberty or property interest.  (ECF No. 1, PageID.3.)  Plaintiff therefore fails to state a procedural due process claim against Defendants.

Moreover, to the extent that Plaintiff intended to raise a substantive due process claim regarding Defendants' actions, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens).  If such an amendment exists, the substantive due process claim is properly dismissed.  *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).  In this case, the First and Eighth Amendments apply to protect Plaintiff's right to be free from retaliation and to be free from cruel and unusual punishment.  *See supra* Part II.B.1–2.  Consequently, any intended substantive due process claim is subject to dismissal.

### b.    Equal Protection

Plaintiff also vaguely mentions "discrimination" and that his rights were violated because of his "mental disability."  (ECF No. 1, PageID.3.)  Liberally construing Plaintiff's complaint, it appears that he may be raising a Fourteenth Amendment equal protection claim.

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  Plaintiff does not identify a fundamental right, and he does not allege that he is a member of

a suspect class. "[P]risoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), "nor are classifications of prisoners," *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003). Moreover, "[d]isabled persons are not a suspect class for purposes of an equal protection challenge." *S.S. v. Kentucky Univ.*, 532 F.3d 445, 457 (6th Cir. 2008).

To state an equal protection claim in a class-of-one case, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783,

791 (6th Cir. 2005)).   "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors."   *Id.* (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" (quoting *Club Italia Soccer & Sports Org., Inc.*, 470 F.3d at 298)).   "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

Plaintiff's equal protection claim is wholly conclusory.  Plaintiff fails to identify any comparator who was similar to him in all relevant aspects.  Plaintiff's conclusory allegations simply do not suffice to state a claim.  *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory

statements.").  Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claims.

### 5.    Grievance Issues

Plaintiff also asserts frustration with the grievance process, alleging that he grieved the incident with Defendant Burton but that the grievance "never got turned in by staff."  (ECF No. 1, PageID.3.)

As an initial matter, Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Thus, because Plaintiff has no liberty interest in the grievance process, he was not deprived of due process.

Likewise, Plaintiff's right to petition the government is not violated by any failure to process or act on his grievances.  The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views."  *Apple v. Glenn*, 183 F.3d

20

477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Additionally, Plaintiff has not been barred from seeking remedies for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred

21

from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy,* 20 F. App'x at 470–71. Plaintiff, therefore, fails to state a cognizable claim regarding the grievance process, and such claim will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Lambert and Berry will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Burton: (1) Plaintiff's official capacity claims; (2) Plaintiff's First Amendment retaliation claim; (3) Plaintiff's First Amendment interference with outgoing mail claim; (3) Plaintiff's Eighth Amendment claim regarding denial of medical care; (4) Plaintiff's Fourteenth Amendment claims; and (5) Plaintiff's claim regarding issues with the grievance procedure. Plaintiff's Eighth Amendment excessive force claim against Defendant Burton remains in the case.

An order consistent with this opinion will be entered.

Dated: __August 26, 2022__        __/s/ Phillip J. Green__
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge